LORE ALFORD, Trustee, In Equity *vs.* WILLIS RICHARDSON et als.

Penobscot.   Opinion July 2, 1921.

*A bequest to A in trust of certain personal property, to pay the net income thereof to B during his natural life, and at his death to his wife if she survives, for their support and maintenance, with discretionary power to sell a part of said personal property and apply the proceeds for said purposes if necessary, invests the trustee with the right to use his own discretion and judgment in determining whether or not the conditions specified in the will exist or not in fact, and as to how much relief may properly be given.   So long as he acts within his power, honestly and in good faith, not arbitrarily or capriciously, his determination is conclusive and his judgment will not be reviewed.*

A testator bequeathed to a trustee certain shares of the capital stock of three corporations, in trust to pay the net annual income thereof to his brother, W, during his natural life; and further provided as follows:   "If, during the life of said W the income from said trust estate is insufficient for his comfortable support and maintenance, the trustee may in his discretion sell the stock of the A company, or so much thereof as may be necessary and of the proceeds thereof pay such amounts to the said W from time to time as may in his judgment be suitable and proper.   I leave the whole matter to the sound judgment and discretion of the trustee.   If the aforesaid funds prove insufficient for the comfortable support of the said W, then in that event, if it is absolutely necessary for his support and maintenance, I authorize and direct the trustee to dispose of so much of the stock of B company as in his judgment may be suitable and proper for the aforesaid purpose."   If W's wife survived him, the net annual income was to be paid to her during her natural life.   The trust was to terminate upon the death of W, if he survived his wife; if the wife survived, then upon her death.

*Held:*

That it was the intention of the testator to interpose between the principal of the fund and W, and W's creditors, the discretion of a trustee in whom he had implicit confidence.

That as to the stock of A company the discretionary power was conferred in the broadest terms; as to the stock of B company the power was limited to absolute necessity; as to the stock of C company no authority to sell was given, and

such sale, if advisable, must rest upon authority to be granted by a court having jurisdiction of testamentary trusts, upon special application therefor.

That such a trust is valid and does not confer an absolute estate in the principal of the fund to the beneficiary.

A bill in equity brought by Lore Alford, as trustee under the provisions of the will of George H. Richardson late of Old Town, deceased, seeking the interpretation of paragraph 8 of said will.   Upon a hearing, at the close of the testimony, by agreement of the parties, the case was reported to the Law Court, upon bill, answers and replications and so much of the evidence as was legally admissible.   Bill sustained.

Case stated in the opinion.

*George H. Worcester,* for plaintiff.

*Charles H. Bartlett, Joseph F. Gould, John Wilson, Ryder & Simpson, and C. D. Bartlett,* for defendants.

SITTING:  CORNISH, C. J., SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, JJ.

MORRILL, J.   This bill in equity is brought by a testamentary trustee for instructions as to the execution of his trust.   George H. Richardson late of Old Town, died September 26, 1915; his will dated May 17, 1912, in which the plaintiff was appointed executor and trustee, was allowed at the November term 1915 of the Probate Court for Penobscot County.   The plaintiff qualified as executor and undertook the administration of the estate; he qualified as trustee May 2, 1917; an order of distribution of the estate was issued November 26, 1918.

The testator first created a trust of his entire estate for the benefit of his mother, who pre-deceased him; the estate was therefore distributed under nine provisions of the will, the last of which bequeathed and devised the residuary estate in equal shares to his sister, Rose B. Bowman and to his brother, Willis Richardson.

The eighth clause of the will reads, as follows:

''8—I give and bequeath to the Trustee hereinafter named six shares of the capital stock of the Bickmore Gall Cure Company, ten shares of the capital stock of the Old Town Canoe Company, and fifteen shares of the capital stock of the Massachusetts Lighting

Companies, in trust, however, for the following uses and purposes, that is to say: The net annual income thereof to be paid to my brother, Willis Richardson, during the term of his natural life. If, however, during the life of said Willis the income from said trust estate is insufficient for his comfortable support and maintenance, the Trustee may in his discretion sell the stock of the Massachusetts Lighting Companies, or so much thereof as may be necessary and of the proceeds thereof pay such amounts to the said Willis from time to time as may in his judgment be suitable and proper. I leave the whole matter to the sound judgment and discretion of the Trustee.

If the aforesaid funds prove insufficient for the comfortable support of the said Willis, then in that event, if it is absolutely necessary for his support and maintenance, I authorize and direct the Trustee to dispose of so much of the stock of the Old Town Canoe Company as in his judgment may be suitable and proper for the aforesaid purpose. In the event of the necessity of selling the stock of the Old Town Canoe Company, I desire that it at first be offered to my associates, the present stockholders in the said Canoe Company, and that they may be given the first opportunity to purchase said stock at its fair market value; and for the purpose of determining the value, the Trustee should have full opportunity to examine the books and papers of the Canoe Company. In case said associates do not purchase the stock, then in that event it may be sold upon the open market.

If the said Willis' wife survives him, then in that event I direct the Trustee to pay the net annual income thereof to his said wife, Gussie M. Richardson, during the term of her natural life. At the death of the said Gussie, in case she survives her husband, this trust shall thereupon cease. In case said Gussie dies before the said Willis, then in that event the trust shall terminate upon the death of said Willis."

At the date of the bill, March 18, 1919, the plaintiff was the custodian of a trust fund manifestly designed by the testator for the benefit of his brother, Willis; the testator had reason to believe, and evidently relied upon the belief, that the fund would yield an income sufficient for the comfortable support of Willis and his wife. But contrary to that expectation, the major part of that fund had been invested by the testator in the stock of two apparently highly prosperous private corporations, the Bickmore Gall Cure Company,

later called The Bickmore Company, and Old Town Canoe Company, which were not paying dividends; in their management his representative had no part; for this stock there was no open market; nor was any assurance to be had as to payment of dividends in the future. The treasurer of the Old Town Canoe Company testified that it had never been the policy to pay a dividend, although the company had paid dividends ten or twelve years before. While vested with authority to sell the stock of the Old Town Canoe Company, the Trustee was directed by the terms of the will to first offer it to the other stockholders, who were in control of the company and directed its non-dividend paying policy. In both corporations George A. Gray and his family held controlling stock interests.

The trustee was further embarrassed by transactions between George A. Gray, a former associate of the testator in the above named corporations and president of both companies, and Willis Richardson, pending the settlement of the estate. The share of the latter in the residuary estate was $13,226.88 at inventory values, of which $978.35 was in cash. In the period between Mr. Richardson's death and December 1, 1919, some of this residuary estate had been sold and the balance, valued by Mr. Gray at $7,820, was pledged to the latter as security for a balance due for advances during that period amounting on December 1, 1919 to $6,509.17. On February 7, 1919 Willis Richardson, in consideration of past advances and promised future advances, executed in favor of George A. Gray an assignment of "all my right and claim in and to the enjoyment of any and all part of the principal of said trust fund, with full power and authority to demand, collect and receive of said trustee, or his successor, the proceeds of any stock held by him as part of the trust fund and disposed of in accordance with the terms of the will as aforesaid, which proceeds I hereby pledge as security for the present and future advances made to me as aforesaid."

In this situation, although the trustee had broad discretionary powers under the will, he was fully justified for the protection of the trust fund and the interests both of life beneficiaries and remaindermen, in seeking the direction of the court as to his duties relative to a sale of the stock, and as to proceedings to compel payment of dividends thereon.

On December 31, 1919, during an adjournment of the hearing of this cause a dividend of fifty per cent was declared upon the outstanding

stock of Bickmore Company.   Since the cause was argued the court has been informed that the shares of stock in Old Town Canoe Company and in the Massachusetts Lighting Companies have been sold pursuant to an agreement between the parties.   The court is thus relieved of the necessity of instructing the trustee as to the sale of the stocks and as to action to enforce payment of dividends.

It remains for us to consider certain inquiries as to payments of income and principal of the trust fund by the trustee.

It is very clear from reading the entire will in the light of the conditions surrounding the testator at the time the will was executed that, after devoting his estate to the care of his aged mother, his next thought was to provide for his brother, Willis, and the latter's wife, against want in their declining years.   Willis was about sixty-five years of age when the will was made; he and his wife had come to Old Town in 1908 to live with the testator and his mother, and to care for the mother during her declining years; this, Mrs. Gussie Richardson did most devotedly until the mother's death in 1914; after the latter's death they continued to live in the house at the testator's request; Mrs. Richardson to quote her language—"just looked after the house and made the home as he asked me to—took his mother's place at the table and everything."   Neither Willis nor his wife had available property of any substantial amount; the former was unable to work except at light tasks about the house; the attitude of the testator towards him is thus described by Mrs. Richardson:   "He said he never would be able to do anything in his opinion  .  .  .  .  and that he never should have any further money troubles, and seemed—his whole manner seemed to be to make him comfortable and happy and keep him contented during life."

Although bequeathing to Willis one-half of the residuary estate, which, as we have seen, amounted to $13,226.88, and included one undivided half of the homestead, the testator unquestionably created this trust fund as a safeguard, an insurance fund, against improvidence and want after his death.   The net annual income of the fund is to be paid to Willis during his life, and after his death to his wife, Gussie, if she survives him; but it was likewise unquestionably the intention of the testator to interpose between the principal of the fund and Willis, and Willis' creditors, the discretion of a trustee in whom he had implicit confidence.   As to the stock of the Massa-

chusetts Lighting Companies the discretionary power was conferred in the broadest terms; as to the stock of The Old Town Canoe Company the power was limited to "absolute necessity," thus safeguarding the principal; and as to the stock of The Bickmore Company no authority to sell was given; nor was any authority given to use principal for the benefit of Gussie, after the death of Willis. Such a trust is valid and does not confer an absolute estate in the principal of the fund to the beneficiary. *Brown* v. *Lumbert*, 221 Mass., 419, 420. 1 Perry on Trusts, 5th Ed. Sections 386a, 386b.

The will invests the trustee with the right to use his discretion, to use his own judgment, in determining whether or not the conditions specified in the will exist or not in fact, and as to how much relief may properly be given. So long as he acts within his power, honestly and in good faith, his determination is conclusive. "He may use, but must not abuse, his trust." *Huston* v. *Dodge*, 111 Maine, 246, at Page 253. *Wright* v. *Blinn*, 225 Mass., 146, 148. *Leverett* v. *Barnwell*, 214 Mass., 105, 108.

"The power conferred upon the trustee was the exercise of reasonably sound judgment. No arbitrary or capricious power was conferred even though honestly exercised. A trustee vested with discretionary power to distribute a fund in whole or in part is bound to use reasonable prudence. The possession of full power or wide discretion by a trustee means the kind of power and discretion which inheres in a fiduciary relation and not that illimitable potentiality which an unrestricted individual possesses respecting his own property. There is an implication, when even broad powers are conferred, that they are to be exercised with that soundness of judgment which follows from a due appreciation of trust responsibility. Prudence and reasonableness, not caprice or careless good nature, much less a desire on the part of the trustee to be relieved from trouble furnish the standard of conduct." *Corkery* v. *Dorsey*, 223 Mass., 97, 101.

These principles are applicable to the instant case and the application of them will afford answers to the questions submitted by the trustee. The trustee is accordingly advised:

1. Payments made by the trustee from the trust funds are to be made to Willis Richardson during his lifetime. The case shows that on December 30, 1919 said George A. Gray executed a release of all rights to said trust fund acquired under the assignment of February

7, 1919, and was dismissed as a party defendant in the cause. After the death of Willis, if his wife, Gussie M. Richardson, survives him, payments of income are to be made to her during her lifetime.

2. If the trustee in the exercise of a sound discretion makes payments to Willis Richardson from the principal of the trust fund, he is not in duty bound to see that such payments are applied for the comfortable support and maintenance of Willis Richardson.

The third, fourth and fifth questions may be answered together.

We think that it was clearly the intention of the testator that Willis Richardson and his wife, during their joint lives, should have the means to live comfortably according to their degree and station in life. To what extent this purpose was to be assured by expenditure from the principal invested in stock of the Massachusetts Lighting Companies, he committed to the discretion of the trustee. "The trustee may in his discretion sell the stock . . . . and of the proceeds thereof pay such amounts to said Willis from time to time as may in his judgment be suitable and proper. *I leave the whole matter to the sound judgment and discretion of the trustee,*" in his language. The right to exercise this discretion cannot arise unless the income is insufficient for the comfortable support and maintenance of Willis and his wife.

In the exercise of this discretion the trustee undoubtedly has the right to, and should, take into consideration the amount and availability of Willis Richardson's private estate, as well as all other facts and circumstances. The support and maintenance of Gussie M. Richardson, not of Willis Richardson *alone*, is to be considered, and in the discretion of the trustee provided for; but of no other person. The rights of the remainder-men are to be respected and guarded. The trustee may refuse to make any payments from the proceeds of the stock of the Massachusetts Lighting Companies, or he may make such payments more liberally than the demands of absolute necessity may require. But in the exercise of his discretion he must act reasonably, with sound judgment, appreciative of the responsibility, and not arbitrarily or capriciously; conforming to that rule, his judgment will not be reviewed. *Wright* v. *Blinn,* supra.

When, however, the funds derived from the sale of stock of the Massachusetts Lighting Companies are exhausted, the expenditure from the proceeds of sale of stock of the Old Town Canoe Company is limited to what is "absolutely necessary" for the support and

maintenance of Willis and his wife during his lifetime, and expenditure of principal for that purpose is authorized and directed. .

It should always be remembered that Mrs. Richardson, if she survives her husband, will be dependent upon income alone, and that payments from principal will reduce the income to which she will be entitled.

6. The trustee may make, but is not in duty bound irrespective of his own discretion and judgment, and may refuse, to make payments from principal for the past support and maintenance of Willis. He should not reimburse Willis from principal for payments made by the latter from his private estate, for support and maintenance.

It appears that during the administration of the estate certain income from the trust fund was used by Mr. Alford, with the knowledge of Willis, for the purpose of settlement of the estate. Upon receipting for the final payment on his distributive share, Willis signed the following acknowledgment, as a part of the receipt: "I hereby acknowledge that as such residuary legatee I have received the equivalent of such income in the property turned over to me as my share of the residue." He must abide by this acknowledgment. There is no illegality in the cestui que trust authorizing or ratifying an act which otherwise would be a breach of trust towards himself. *Pope* v. *Farnsworth,* 146 Mass., 339, 344.

Moreover there is an entire absence of evidence of caprice, misconduct, bad faith, or inefficiency on the part of the trustee in delaying a sale of the stock under the circumstances with which he was confronted when the bill was filed. He seems to have acted with entire appreciation of his responsibility toward the beneficiaries for life as well as toward the remainder-men.

7. This question is no longer important, in view of the sale of stock effected since the cause was argued.

8. We have already pointed out the distinction to be observed between the exercise of the discretionary power of the trustee relative to the proceeds of the stock of the Massachusetts Lighting Companies, and his power as to the proceeds of the stock of the Old Town Canoe Company.

We need only add that no authority is given to the trustee to sell the shares of stock of The Bickmore Company. Such sale, if advisable, must rest upon authority to be granted by a court having jurisdiction of testamentary trusts, upon special application therefor.

The action of the plaintiff having been taken to protect the trust, as well as for instruction as to its execution, and being fully justified by the circumstances, we think that his costs, expenses and reasonable charges of counsel, to be allowed by the justice who settles the final decree, should be a charge upon the proceeds of the sale of the stock of the Massachusetts Lighting Companies.

> *Bill sustained.*
> *Decree in accordance with*
> *this opinion.*